## ADAMS *v.* HILL.

In a writ of dower, it appeared that one Parrott conveyed to Adams, the plaintiff's husband, on the 2d of June, 1821, certain lands in Lancaster. On the 9th of June one Whidden conveyed to Adams certain lands in Greenland, and Adams immediately mortgaged them to Parrott, to secure the purchase money of the lands in Lancaster. *Held*, that Adams had only an instantaneous seizin of the land in Greenland, and that his widow was not entitled to dower against the mortgagee without contributing her proportion of the mortgage debt for the land in Lancaster.

A witness called on the tenant who was the assignee of the mortgagee, who stated that he retained $1,000, in pursuance of the agreement recited in a certain bond, by which he was to pay that sum within one year after Adams should procure a release of his wife's right of dower. Adams had also conveyed his interest in the land to the tenant. The witness, then, asked him whether he should require Mrs. Adams to tender her proportion of the money that had been paid to extinguish the incumbrances. He answered that he should not think a tender necessary, as he had money enough in his hands to meet her claim. *Held*, that it was unnecessary for the widow to make any tender of money.

*Held*, also, that the reservation of the sum of $1,000 should be regarded as a payment of the sum to be contributed by the widow.

Adams v. Hill.

WRIT OF DOWER, wherein the plaintiff, as widow of Lemuel Adams, claims dower in certain lands in Greenland, in this county.

Plea, traversing the seizure of the husband during coverture, and issue thereon.

On the trial, it appeared in evidence on the part of the plaintiff, that she was married to Lemuel Adams on the 17th day of September, 1826; that prior to 1841, she obtained a decree of divorce from Lemuel Adams, *a mensa et thoro*, in the courts of the State of Maine, for the cause of extreme cruelty; that Lemuel Adams died in 1850, and that she duly demanded her dower of the defendant, on the 7th of May, 1851. The writ bears date the 29th of August, 1851. It further appeared in evidence on the part of the plaintiff, that one Samuel L. Whidden conveyed the said lands to Lemuel Adams, by deed dated June 9th, 1821, for the consideration expressed in said deed of $4,000; that Lemuel Adams occupied the lands from the time of that conveyance until January 14th, 1841, when he conveyed the premises, by warrantee deed of that date, to the defendant, with the following exception to the operation of the covenants of said deed therein contained, " excepting a certain deed of mortgage made by me to William W. Parrott, bearing date the 9th day of June, A. D. 1821, and recorded," &c.; and also one other deed " of mortgage made to Andrew P. Wiggin, bearing date the 6th April, 1824, and recorded," &c.; " and the persons claiming by or under said deeds of mortgage."

It was then proved, on the part of the defendant, that on the 2d day of June, 1821, William W. Parrott conveyed to Lemuel Adams certain lands in Lancaster, in the county of Coos, by warrantee deed of that date, for the consideration of $2,200 therein expressed; that on the 9th day of June, 1821, Lemuel Adams conveyed the Lancaster lands, which were so conveyed to him by Parrott, together with other lands, to Samuel L. Whidden, by warrantee deed of that

date, for the consideration of $5,000 expressed therein; and at the same time Lemuel Adams executed to Parrott a mortgage of the lands in Greenland, in which dower is demanded by the plaintiff, to secure the payment of a note of the same date, for $2,200; that on the 12th day of July, 1832, Parrott assigned the mortgage and the mortgage debt to Andrew P. Wiggin, and on the 15th day of January, 1841, Wiggin assigned the mortgage and mortgage debt to the defendant, who now holds the same, and that there was due upon the mortgage debt, at the date of the last assignment, the sum of $2,247.

To the admission of the deeds aforesaid, from Parrott to Lemuel Adams, and from him to Whidden, and of the mortgage from Lemuel Adams to Parrott, the plaintiff objected, but the court overruled the objection.

The plaintiff then introduced a bond from the defendant to Lemuel Adams, bearing date the 14th day of January, 1841, in the penal sum of $6,000, with condition as follows:—The condition of the above written obligation is such that whereas the said Adams has this day conveyed to him, the said Hill, a certain farm, situated in said Greenland, with the buildings thereon, as will appear by his, the said Adams' deed to him, the said Hill, of even date with these presents, with covenants of warranty, with certain exceptions. And whereas Sarah Adams, the wife of said Lemuel, from whom he has been divorced from bed and board, is supposed by some to have a claim of dower in the equity of redemption in said farm, the same being at the time of his mortgage and now under mortgage; and whereas, in part payment of said farm, the said Hill has made to the said Adams his promissory note of even date herewith, for the sum of $1,000, payable to him, the said Adams, or order, on demand, with interest; and whereas the said Hill has agreed to pay the said Adams therefor the further sum of $1,000 in ten years, in the following manner, that is to say, $100 of the principal each and every year from the

Adams *v.* Hill.

date hereof, with the interest then due on the said sum of $1,000, or such part thereof as may remain unpaid, and such further sum thereof as he, the said Hill, may find convenient, but no less than $100 at any one time; and also to pay to him, the said Adams, the interest on the further sum of $1,000, annually, during his, the said Lemuel's, natural life, until the said principal sum of $1,000 last named, is paid, and pay the said principal sum of $1,000 last named, within one year after the said Adams shall procure the release of dower of her, the said Sarah Adams, in and to said farm, or in case of the death of the said Sarah before the death of the said Lemuel, then within one year thereafter to pay said Lemuel, or his legal representatives, such part of said sum of $1,000, and interest thereon, as may be justly and equitably due thereon, after a deduction of the value of the incumbrance of the said Sarah's supposed dower in said estate, if she may have any right of dower therein, then this obligation is to be void, &c.

The plaintiff also introduced as a witness William C. Allen, who testified that in the early part of May, 1851, as the agent of the plaintiff, he called upon the defendant, at his house in Greenland; that the defendant then stated that he purchased the farm in question in this suit, of Lemuel Adams, at the agreed sum of $6,000; that the farm was mortgaged to William W. Parrott, and also to Andrew P. Wiggin; that on the day of the purchase, the amount due on the Parrott mortgage was $2,247, and on the Wiggin mortgage the sum of $354,88, making in the whole the sum of $2,601,88; that he agreed with Adams to pay the amount due on the mortgages, and also certain notes which Adams had given for interest on the mortgages, but which were not secured therein, amounting to about the sum of $400; that he paid the several sums aforesaid, and took assignments of the mortgages to himself; that he paid the balance of the $6,000 to Adams, except the sum of $1,000, which he retained, in pursuance of an agreement between

him and Adams, as set forth in the bond of the defendant to Lemuel Adams the condition whereof is before set forth, a copy of which bond the defendant then showed the witness; that the witness then stated to the defendant that possibly it might be necessary for Mrs. Adams, the plaintiff, to make a tender of her proportion or contributive share of what he had paid to extinguish the incumbrances, and asked him, as he had the reserved $1,000 in his hands, if he should require a tender, and he said no; he should not consider a tender necessary, as he had as much money in his hands as would be sufficient, he thought, to meet Mrs. Adams' claim, if she established any; and that he had taken no steps to foreclose the mortgages other than taking the assignments aforesaid. The witness further testified that he is a counsellor at law in the courts in the State of Maine, and was counsel for Lemuel Adams in the proceedings for divorce from bed and board between him and the plaintiff; that such a divorce is provided for by the statutes of the State of Maine, but has no effect upon the legal rights of the parties, except to create a separate maintenance, and has no effect upon a widow's claim for dower. The plaintiff also produced duly certified copies of the records of the supreme court of the State of Maine, showing the decree of divorce from bed and board, in consequence of extreme cruelty of Lemuel Adams to the plaintiff.

A verdict was taken by consent for the plaintiff, subject to the opinion of the superior court. The question was submitted to the jury as to the damages for the detention of dower after demand made; and the jury were instructed by the court that one-third part of the income of the whole property, as it was in 1841, when Lemuel Adams parted with his title, without regard to the mortgage, would be the measure of the damages, to which instructions the defendant excepted. The jury assessed the damages at $129,85. It was agreed that judgment be entered on the verdict, the verdict amended and judgment entered thereon,

Adams *v.* Hill.

or the verdict set aside and a new trial granted; or judgment entered for the defendant, according to the opinion of the superior court on the foregoing case.

*Marston*, for the defendant.

I. The plaintiff is not entitled to dower at all. Her husband had an instantaneous seizin only.

The mortgage to Parrott was, in fact, given for part of the purchase money, and given at the same time of the conveyance to Adams, and it was one transaction.

Afterwards Hill became the assignee of that mortgage, and after that Adams released his right to redeem, to Hill, the defendant.

This case is precisely like that of *Jackson* v. *Dewitt*, 6 Cowen 316.

II. If the plaintiff is entitled to dower at all, it is only of an equity of redemption; but before she can maintain an action for dower she must redeem the land, by paying the amount due on the mortgage, or contribute her due proportion of the money, according to her interest. *Cass* v. *Martin*, 6 N. H. Rep. 26; *Gibson* v. *Crehore*, 5 Pick. 146; *Rossiter* v. *Cossit*, 15 N. H. Rep. 38.

III. The declaration of Hill, as to the tender, cannot affect this question.

It was no waiver.

It was not so intended by Hill.

Hill did not understand that he was making a declaration affecting his rights.

The money was not his to dispose of.

All he meant to say was, if the plaintiff got her dower, he had security sufficient to indemnify him.

He did not understand he was enlarging her rights or lessening her liabilities or obligations. 7 Mass. Rep. 449; 7 Mass. Rep. 483; 4 Mass. Rep. 347; *Bullard* v. *Bowers*, 10 N. H. Rep. 500; *Clark* v. *Munroe*, 14 Mass. Rep. 350;

---
Adams *v.* Hill.
---

*Holbrook* v. *Finney*, 4 Mass. Rep. 566; *Maybury* v. *Price*, 15 Peters 21; 1 Greenl. Ev. 172, note 1; 4 Kent's Com. 45.

*Wells & Bacon*, for the plaintiff.

1. The case shows that Lemuel Adams, the husband of the demandant, had possession of the premises in which the demandant claims dower during the coverture; this entitles the demandant to her dower in the premises, unless the tenant proves paramount title in himself. *Knight* v. *Maines*, 12 Maine Rep. 41.

2. In an action for dower the tenant, deriving title by mesne conveyance from the husband of the demandant, cannot deny the seizin of the husband, nor can he set up a mortgage on a subsisting title, there having been no foreclosure or entry by the mortgagee. A purchase of the mortgage from the mortgagee is, in effect, a discharge of the mortgage in favor of the title under the mortgager. *Collins* v. *Torry*, 7 Johns. 279.

3. The mortgager, notwithstanding the mortgage, is deemed seized and is the legal owner of the land. 6 Johns. 290.

The doctrine of *Collins* v. *Torry* is recognized by the superior court of New Hampshire in 5 N. H. Rep. 431.

4. Where the tenant in possession enters by virtue of a purchase of the equity of redemption from the mortgager, and then buys the mortgage, and takes an assigment to himself, this extinguishes the mortgage, and the widow of the mortgager is entitled to her dower. *Coates* v. *Cheever*, 1 Cowen 463; *Bolton* v. *Ballard*, 13 Mass. Rep. 227.

GILCHRIST, C. J. The plaintiff claims dower in certain lands in Greenland.

Taking the deeds mentioned in the case in the order of time, it appears that on the 2d day of June, 1821, Parrott

conveyed to Adams certain lands in Lancaster, and on the 9th of June Adams conveyed them to Whidden. On the same 9th of June, Whidden conveyed the Greenland lands to Adams, who immediately mortgaged them to Parrott.

On the 2d of June, 1821, Parrott conveyed to Adams lands in Lancaster of the value of $2,200.

On the 9th of June, 1821, Whidden conveyed to Adams lands in Greenland to the value of $4,000.

On the 9th of June, 1821, Adams conveyed to Whidden lands in Lancaster and other places, of the value of $5,000.

On the 9th of June, 1821, Adams mortgaged the Greenland land to Parrott, to secure the sum of $2,200.

When Adams bought the Greenland lands of Whidden, he immediately mortgaged them to Parrott, to secure the payment of the price of the Lancaster lands.

This is the instantaneous seizin alleged to exist by the defendant.

The rule is, that of a seizin for an instant, the wife shall not be endowed. Co. Litt. 31 b. That is where the new estate was merely *in transitu*, and never rested in the husband. *Amcotts* v. *Catherich*, Cro. Jac. 615. The seizin for an instant is where the husband by the same act, or by the same conveyance by which he acquires the seizin, parts with it. Thus if a tenant for life make a feoffment in fee his wife shall not be endowed, for by making the same feoffment which passed the fee, he acquired a fee. And if a joint tenant make a feoffment, his wife shall not be endowed, for by the feoffment he was seized of a several estate but for an instant, which he acquired and parted with by the feoffment. Therefore, where A. conveyed to B. who by deed of the same date mortgaged back to A., it was held that B.'s wife was not dowable. *Holbrook* v. *Finney*, 4 Mass. Rep. 566. The execution of the two deeds was held to constitute but one act.

In the case of *Clark* v. *Munroe*, 14 Mass. Rep. 351, the mortgage was to a third person, and was made in pursu-

ance of a previous agreement. It was held that the deeds still constituted but one transaction, and that the wife of the mortgager was not dowable.

In 4 Kent's Com. 39, it is said that the wife is not dowable " where the husband takes a conveyance in fee, and at the same time mortgages the land back to the grantor, or to a third person, to secure the purchase money, in whole or in part. Dower cannot be claimed as against rights under that mortgage."

In the present case, the mortgage was not made to secure the purchase money of the Greenland lands, but of the lands in Lancaster. Still the two deeds would seem to constitute but one transaction, and the estate passes out of him at the same instant he receives it. *Stow* v. *Tift*, 15 Johns. 458. The husband is not beneficially seized so as to entitle his wife to dower against the mortgagee, and *Kent* says this conclusion is agreeable to the manifest justice of the case. There certainly is as much justice in holding that she is not so entitled against the mortgagee, though the mortgage were not given to secure the purchase money of that particular estate. If there be only an instantaneous seizin where the mortgage is given to secure the purchase money of the mortgaged land, the seizin is equally instantaneous here, for it can make no difference what particular debt the mortgager secures.

We think, then, that the plaintiff is entitled to dower on contributing her due proportion of the mortgaged debt. *Bullard* v. *Bowers*, 10 N. H. Rep. 500.

When Adams conveyed the land to the defendant, in 1841, he excepted from the operation of the deed the mortgage to Parrott of June 9th, 1821, and the title of the defendant from Parrott is not by paying the debt to Parrott, and thus discharging the mortgage, but simply by taking an assignment of it. It is true, he holds all the title that Adams had, and all the title that Parrott had, and the two titles, therefore, unite in him. Now by this, *prima facie,*

the mortgage debt is extinguished. *Greenough* v. *Rolfe*, 4 N. H. Rep. 357. But that is not be considered as done without regarding the equities of the parties. The debt, even if discharged so that an action could not be sustained against the original promiser, still subsists in the nature of a charge or lien upon the land, and upholds the mortgage title as against any one who ought not in justice to take the land from the mortgagee without paying the money. *Robinson* v. *Leavitt*, 7 N. H. Rep. 98. So, in the same case, it was held that one who pays the debt as assignee may consider the debt as a lien upon the land, so far as justice may require, as if the debt had actually been assigned. It is also said that where money due on a mortgage is paid, it shall operate as a discharge or as an assignment, substituting him who pays in the place of the mortgagee, as may best serve the purposes of justice, and reference is made to *Starr* v. *Ellis*, 6 Johns. Ch. 695.

But the case leaves no doubt on this point, for it is stated that the defendant took an assignment of the debt, and the case speaks of it in no other way.

She, then, may maintain a writ of dower, but it can be only on contributing her proportion of the sum paid on the mortgage, in proportion to her interest. *Rossiter* v. *Cossit*, 15 N. H. Rep. 43, and cases there cited by the court.

Another question arises in the case in relation to the effect of the declarations of Hill, the defendant.

It appears that on the 14th of January, 1841, when Adams conveyed the Greenland land to Hill, the latter gave him a bond, reciting that Mrs. Adams was supposed to have a claim of dower in the equity of redemption; that in part payment of the land Hill had given Adams his note for $1,000, payable on demand, and had agreed to pay the further sum of $1,000 in ten years, by instalments, the principal to be paid in one year after Adams should procure his wife's release of dower; or if she should die before him, then in one year from her death, to pay him such part of the

$1,000 as should be equitably due, after deducting the value of the incumbrance of her supposed right of dower, if she had any right, and if he performed his agreement, then the bond was to be void.

In May, 1851, a witness for the plaintiff called on the defendant, and the latter, after stating the amount due on the mortgages, said that he had paid all the purchase money, ($6,000,) except the sum of $1,000, which he retained, in pursuance of the agreement recited in the bond. The witness then said that it might be necessary for Mrs. Adams to tender her proportion of what had been paid to extinguish the incumbrances, and asked him whether, as he had the reserved $1,000 in his hands, he should require a tender?

He said " no ; he should not think a tender necessary, as he had money enough in his hands to meet Mrs. Adams' claim."

Now there is no reason for giving any construction to this language, except what it would obviously bear. It was a simple question put to the defendant, and the answer was distinctly and, to all appearance, understandingly given ; and there was no reason why a person of ordinary intelligence need misunderstand either the question or the answer. We think the defendant's statement rendered a tender unnecessary.

When the husband of a person for whose benefit a provision was made by a mortgagee, purchased the land of the mortgager, and retained in his hands a part of the purchase money, which was not to be paid until the mortgage should be removed, it being reserved to pay the mortgage, it was held that such reservation must be regarded as payment of his wife's claim. *Bullard* v. *Bowers,* 10 N. H. Rep. 503. We think the reservation must be so regarded in this case.

As to the measure of damages, if there had been no mortgage, she would have been entitled to one-third part of the land. As the mortgage is paid, she is now entitled to

that provision and one-third of the income, as the land was in 1841 would be the proper measure of damages.

*Judgment on the verdict.*