**Stephen LONG, Ellene Kenney, Mehran Fathi, Marcia Fathi, Pat Long, Iola Jones, Sherri Jones, and Richard O'Connor, Plaintiffs–Respondents,**

**v.**

**Frankie J. ZIRKLE, Berl W. Zirkle, Robert M. Sweere, Defendants–Appellants,**

**and**

**Tried Stone Church of Republic, Incorporated, A Missouri Not–For–Profit Corporation, Defendant.**

**No. 17301.**

Missouri Court of Appeals, Southern District, Division One.

June 28, 1991.

---

1. It is not necessary to decide whether there may be another reason or reasons why the penalty exception does not apply.

Larry K. Bratvold, Springfield, for plaintiffs-respondents.

Robert M. Sweere, Springfield, for defendants-appellants.

PREWITT, Judge.

"If a house be divided against itself, that house cannot stand." *Mark* 3:25 (King James). Although divided and tottering, the house of worship aptly known as Tried Stone Church has not yet fallen.

Appellants Zirkle hold a note, the payment of which is secured by a deed of trust on the church property. Defendant–Appellant Sweere is the successor trustee under the deed of trust. At the Zirkles' request he started proceedings to foreclose the property.

Plaintiffs are members of Tried Stone Church of Republic, Inc., a Missouri Not–For–Profit Corporation formed under Chapter 355.[1] It holds title to the property. At the request of plaintiffs, the trial court permanently enjoined the foreclosure on the basis defendants sought to foreclose. Defendants Zirkle and Sweere appeal.

Under Rule 73.01, review of this non-jury trial is to sustain the trial court unless there is no substantial evidence to support its order, unless its order is against the weight of the evidence, unless it errone-

---

1. The parties treat this as a "members' derivative action" under Rule 52.09, and we accept their designation without determining that it is correct.

ously declares the law, or unless it erroneously applies the law. *M.D. and Assoc. v. Sears, Roebuck & Co.*, 749 S.W.2d 454, 455 (Mo.App.1988).

■ Due regard is given to the opportunity of the trial judge to determine the credibility of witnesses. Rule 73.01(c)(2). The trial judge can disbelieve testimony, even when uncontradicted. *Robinson v. Estate of Robinson*, 768 S.W.2d 676, 677 (Mo.App.1989).

Appellants present two points relied on. The first point states:

The trial court erred and misapplied the law in holding that the purported note payment made with a money order showing W.J. Kenney as the remitter, mailed in an envelope with a return address showing W.J. Kenney as the mailor, with a return receipt addressed to W.J. Kenney was not payment by a stranger and having so found in thereafter enjoining appellants' scheduled foreclosure of the real estate securing payment of said note because the purported note payment was an attempted payment by a stranger to the instrument which appellants were not required to accept under Section § 400.3–603(2) R.S.MO. in that W.J. Kenney was neither a party to the instrument nor did he have any legal obligation to pay it nor could any of his property be subjected to its satisfaction and in that assuming the persons providing the funds for the purported payment were members of the corporate maker of the note the purported payment was still made by a stranger since the purported payment was not made by persons authorized by said corporation to make said payment.

W.J. Kenney is the husband of Plaintiff Ellene Kinney. He is not a "member" of the church. She is secretary of the church corporation. Defendant Frankie Zirkle is treasurer of the corporation, a member of it and one of its incorporators. The Zirkles acquired the note January 8, 1990. Mrs. Zirkle announced at the September 2, 1990 church board meeting that she was not going to make payment of the church's bills until the end of the month. The next

payment on the note was due September 25, 1990.

After the church services on September 21, 1990, respondent Stephen Long, pastor of the church, took moneys from concerned members of the church to pay the mortgage payment. He gave the money to Mrs. Kenney. Payment on the note was attempted through a bank money order she purchased, but showing as the remitter "W.J. Kenney—Sept. Church Pmt." It was sent to defendant Berl Zirkle certified mail in an envelope bearing Mr. Kenney's name and address in the upper left hand corner. It was received by Mr. Zirkle on September 25, 1990.

It had been the practice for defendant Frankie Zirkle, as treasurer of the church to make the monthly payments on the note to her husband Berl. Berl Zirkle did not cash the money order, but placed it in a vehicle owned by the Kenneys parked in front of the Kenneys' house. Three days later, on September 28, 1990, the Zirkles gave "Notice of Acceleration" stating that for default in the payment of an installment when due, they were declaring all remaining installments payable. They then gave notice of a trustee's sale of the property to be held on November 9, 1990.

Appellants rely on § 400.3–603(2), RSMo 1986, and cases defining "strangers". That section states:

"Payment or satisfaction may be made with the consent of the holder by any person including a stranger to the instrument. Surrender of the instrument to such a person gives him the rights of a transferee (section 400.3–201)."

One who has an interest in property is not a stranger and can make a valid tender to prevent a foreclosure of an encumbrance on property. *Loftis v. Alexander*, 139 Ga. 346, 77 S.E. 169, 170 (1913); *Sever v. Yetter*, 128 N.J.Eq. 367, 16 A.2d 461, 462 (1940); 9 Thompson on Real Property § 4810, p. 646 (1958); 55 Am.Jur.2d Mortgages § 432, p. 461 (1971); 59 C.J.S. Mortgages § 446, p. 692 (1949).

■ Berl Zirkle had met W.J. Kenney and knew he was the husband of Plaintiff

Ellene Kenney. Common sense tells us, and apparently the trial court, that the Zirkles knew the payment was from Mrs. Kenney and the other plaintiffs, or those aligned with them. It was made by them as members of the church, or on behalf of the church by Mrs. Kenney as an officer. Members of a not-for-profit corporation are allowed under § 355.100, RSMo 1986. As members, plaintiffs have an interest in the church continuing. Preservation of its property would necessarily affect its continuance.

■ In addition, a corporation must necessarily act through its agents. The treasurer of the corporation had a conflict of interest and announced she was not going to timely make this and other payments. As an officer of the corporation Mrs. Kenney could make that payment on its behalf. A tender may be made by an authorized agent as by the debtor itself. *Forderer v. Schmidt*, 154 F. 475, 477 (9th Cir.1907); 55 Am.Jur.2d Mortgages § 432, p. 461 (1971); 74 Am.Jur.2d Tender § 12, p. 554 (1974); 59 C.J.S. Mortgages § 446, 692 (1949). Point I has no merit.

For their remaining point, appellants state:

> The trial court erred and misapplied the law in finding that the instant suit was a properly filed members' "Derivative Suit" and having so found in thereafter enjoining appellants' scheduled foreclosure of the real estate securing payment of the note owed by the corporation of which the plaintiffs were purported members because the plaintiffs did not fulfill the prerequisites for the filing of a members' "Derivative Suit" in

that no proper application was made either to the governing board of the corporation or to the members of the corporation prior to the filing of the suit and in that in finding that internal corporate action would be "unavailing" the court (1) improperly assumed that the mere existence of prior litigation meant that the governing board would fail in its corporate duty; (2) failed to give sufficient weight to the lack of effort made by the plaintiffs in seeking internal corporate relief; (3) failed to properly weigh the evidence regarding the non-party, non-wrongdoing director which said evidence suggested that he would act with independent judgment as to the best interests of the corporation; and (4) failed to apply the presumption that a non-party, non-wrongdoing director would, if given the opportunity, act in the best interests of the corporation.

Rule 52.09 allows such an action by members requiring that certain allegations be made as to their attempts to obtain the action from the directors or comparable authority "or for not making the effort." That rule is set forth below.[2]

■ The members are excused from seeking relief by the board and corporation where such efforts or demands would be useless and unavailing. *Goodwin v. Goodwin*, 583 S.W.2d 559, 560–561 (Mo.App. 1979); *Schick v. Riemer*, 263 S.W.2d 51, 54 (Mo.App.1953).

As we read appellants' point, they are not complaining about the allegations, but the evidence. The trial court noting that this was the fourth lawsuit within a year

**2. RULE 52.09 DERIVATIVE ACTIONS BY SHAREHOLDERS**

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the petition shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law. The petition shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the

directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

involving these parties, concluded that any efforts to have the corporation take action would have been unavailing. In addition, there was evidence which the trial court could have believed that the governing body of the church, the board of elders-deacons was "completely deadlocked".

Although there was no finding by the trial court on this issue, all fact issues upon which no specific findings are made are considered as found in accordance with the result. Rule 73.01(a)(2). Evidence of one member of the board which may be interpreted as indicating to the contrary might not have been believed by the trial court. Based on our limited review, we cannot say the trial court erred in determining that any attempt to have the board act would be unavailing.

The judgment is affirmed.

MAUS, P.J., and CROW, J., concur.